## GLOEKLER v. ERIE RESTAURANT EQUIPMENT CO.

### No. 2483.

District Court, W. D. Pennsylvania.

Jan. 22, 1932.

John M. Clarke, of Pittsburgh, Pa., for plaintiff.

Hugh C. Lord, of Erie, Pa., for defendant.

SCHOONMAKER, District Judge.

This is a suit in equity under the patent laws of the United States, involving two patents issued to J. E. Gloekler, i. e., patent No. 1,610,944, dated December 14, 1926; and patent No. 1,748,123, dated February 25, 1930. It was heard on bill, answer, and proofs. From these we find the following facts:

## Findings of Fact.

The two patents in suit, Nos. 1,610,944 and 1,748,123, were issued to, and are now owned by, the plaintiff.

Both patents refer to improvements in steam cookers, and have for their object the providing of a machine adapted to cook food by the application of steam heat directly in the form of an internally generated surrounding vapor. The alleged invention is in a crowded art.

Claim 2 of patent No. 1,610,944 is typical of the five claims of this patent; it is as follows: "2. A steam cooker consisting of an outer casing having an uppermost outlet flue and a lower heat generating compartment, a heater in said compartment, an inner casing spaced inwardly from the sides, back and top of the outer casing providing a surrounding gas circulation conduit and terminating at the front in the plane of the outer casing, said inner casing having at its base a water containing bath, a front door framing and inner transverse supports above the bath, an opening and closing door in the framing, means for collecting drip water from the door, a water supply tank fixedly mounted at one side of the outer casing having a feed pipe leading through the outer and inner casing across the circulation conduit and into the bath, and a valve controlled water supply pipe leading to the tank provided with a float."

The single claim of patent No. 1,748,123 is as follows: "A steam cooker consisting of an outer casing having a front door opening, an uppermost outlet flue and a lower heat generating compartment, a heater in said compartment, an inner casing spaced inwardly from the sides, back and top of the outer casing providing a surrounding gas circulation conduit and terminating at the front against the front wall of the outer casing around the door opening, said inner casing having at its base a water containing basin of cast metal forming a downward extension thereof and provided with a pipe leading upwardly through its bottom forming a common water supply and exhaust conduit, and a steam heating circulating pipe within the basin having supply and return connections extending through the outer wall and the side wall of the basin."

All the elements covered by claims 1 to 5, inclusive, of patent No. 1,610,944, and the single claim of patent No. 1,748,123, are all to be found in the prior art, and, as assembled in the claims of these two patents, are a mere aggregation of elements which do not coact to produce new and beneficial results.

The defendant manufactures and sells a steam cooker which may be described as follows: "Defendant's cooker has an outer case provided with a heating-chamber at its base, and two cooking-chambers, one above the other, formed by inner casings spaced from each other and at the sides and back from the outer casing, the upper cooking-chamber being spaced from the outer casing at the top. The side-walls of the lower cooking-chamber are insulated. A closure-plate extends the width of the cooking chambers between the heating-chamber and the rear space, cutting off the passage of gas from the heating-chamber to the space directly back of the cooking-chamber. The gases of combustion pass up the sides and may be deflected away from the top-chamber, or may be deflected along the sides of the top-chamber and over the top of the top-chamber, and discharged at the middle of the top of the outer casing. A water-containing pan is provided over the heating-chamber and below the bottom cooking-chamber. It is separated and sealed from the bottom cooking-chamber, the pan forming a separate steam-chamber from which the steam is delivered through a valve-controlled flue from which it may be directed into, or closed off from the lower cooking-chamber, or the upper cooking-chamber, as the cooking-operation may make desirable. Water is delivered to this pan from a float-controlled tank through a pipe extending through the bottom of the case and into the bottom of the pan. Each cooking-chamber is supplied with a door opening closed with a door. A guard-plate is arranged along and under the lower door-opening, the guard-plate extending over and protecting the controlling valves for the burner in the heating-chamber. This guard-plate is slightly inclined to the face of the casing and has a slight rib at its side and front edges strengthening and finishing ornamentally the guard-plate. There is no guard-plate, or other obstruction below the door-opening of the upper cooking-chamber."

Comparing defendant's cooker with the features described in the claims of patent No. 1,610,944, it lacks the means of collecting drip water from the doors of the cooker, the means for gas circulation along the back wall of the cooker by reason of closure plates at the bottom, and the means for the direct delivery of steam from the water bath to the cooking chamber.

Comparing defendant's cooker with the features described in the single claim of patent No. 1,748,123, it lacks the steam pipe through the outer wall of the cooker, the discharge pipe through the side wall of the water

pan, and common inlet and discharge through the bottom of the water pan.

## Conclusions of Law.

We conclude, as a matter of law, that the two patents are void for want of novelty, that, even if valid, the defendant's structure does not infringe, and that therefore the plaintiff's bill should be dismissed.

## Discussion.

We are dealing in the instant case with a crowded art. All of the elements of the patents in suit are found in the prior art. By reason of this association together, no added functions are performed.

The patent of Bruck, issued August 6, 1907, No. 862,443, for a steaming oven or cooking apparatus, and the patent of Hamaker, issued January 8, 1907, No. 840,488, for a combined cooking and heating stove, show all the elements of the plaintiff's patent No. 1,610,944, except the means for collecting drip water from the oven door, and the water supply tank fixedly connected to the outer casing provided with water-regulated mechanism. The British patent of Higgins, No. 4688, in January, 1900, for improvements in cookers, shows every element of plaintiff's patent No. 1,610,944, combined in the same way, with the exception that it does not have the drip collector and the feed-pipe leading through the outer and inner casings.

The patent to Prowse, issued April 23, 1907, No. 851,252, for improvements in cooking apparatus, discloses the water drip collector and water supply tank performing exactly the same functions as in patent No. 1,610,944. If these were added to the structures either of Hamaker or Bruck, they would perform the same functions in the same way in the new relation, as they do in the Prowse patent, and no additional functions.

Drip collector troughs are shown in steam cookers sold by Duparquet, Huot & Moneuse Company of New York City more than two years before the date of the application for the plaintiff's patent.

There was a British steam cooker in the possession of the plaintiff more than two years before the date of the application of either of his patents, shown by photograph (defendant's Exhibit N), which discloses all the elements of plaintiff's patent No. 1,610,-944, performing the same functions as described in the several claims of plaintiff's patent No. 1,610,944.

Under these circumstances, there can be no escape from the conclusion that this patent No. 1,610,944 was void for want of novelty.

In our opinion, the so-called drip collector, which seemed to be the added element which the Patent Office thought revealed invention, performs no useful function for that purpose. After the oven door is opened, moisture on the inner surface of that door would not fall into the drip collector, but onto the floor. If the drip collector had been attached to the lower end of the door instead of the body of the cooker, then it would have swung with the door off the oven as it opened, and might then be said to be a real drip collector for moisture dropping from the inner surface of the door. As it stands in plaintiff's structure, we cannot see that it performs any useful purpose. Certainly it does not co-act with the other elements of the plaintiff's claim to provide any new results.

In addition to that, the defendant's plate (Exhibit Q) is not a drip collector at all. It is at best but a guard plate, whose only useful purpose could be to protect the controlling valves of the burner in the heating chamber from food that might fall from vessels taken from the steaming chamber.

As to the second patent in suit, No. 1,748,-123, all of the elements of the claim of this patent are found in the structure of the plaintiff's first patent and those of the Hamaker, Bruck, and Higgins patents, and perform their functions in the same way, except that cast metal is specified for the water-containing basin, the common water supply and exhaust conduit leading upwardly through the bottom of the water basin and the steam-heating circulation pipe within the basin having supply and return connections through the outer water.

As to these elements, there is no invention in using cast metal for the water basin over other forms of metal, and, even if there were, the British cooker, which was known to the patentee prior to the date of the invention of the patent in suit, was of cast metal. The patent to Prowse shows the introduction of water to the bottom of the water-containing basin. The Wolf patent, No. 1,332,016, shows a steam cooker with a water basin at its base heated by the direct discharge of steam to the water contained in the basin. Steam tables were then in common use for keeping foods warm, and in these tables the water was heated by steam coils immersed in the water of the pans.

There is nothing here that rises to the dignity of invention. These changes in the heating system are mere details in plumbing, which any ordinary plumber would know about, and show no inventive genius. We

therefore find no new elements in plaintiff's patent No. 1,748,123.

On the whole case, the plaintiff's bill should be dismissed. Let a decree be submitted accordingly.